Western Montana Lumber Company of Missoula v. Commissioner. Thornton Lumber Company v. Commissioner.
Western Montana Lumber Co. v. Commissioner
Docket Nos. 90016, 90018.
United States Tax Court
T.C. Memo 1961-326; 1961 Tax Ct. Memo LEXIS 24; 20 T.C.M. (CCH) 1687; T.C.M. (RIA) 61326; December 1, 1961
*24 Peter Meloy, Esq., and Robert C. Johnson, Esq., 555 Fuller Ave., Helena, Mont., for the petitioners. Joseph D. Holmes, Jr., Esq., for the respondent. DRENNEN
Memorandum Opinion DRENNEN, Judge: Respondent determined deficiencies in these consolidated proceedings as follows: Year
Docket
ended
No.
June 30 -
Tax
Deficiency
90016
1954
Income
$36,940.01
1956
Income
41,652.09
90018
1954
Income and
Excess Profits
33,086.47
1955
Income
29,821.89
1956
Income
4,371.47
All issues except depreciation have been settled by the parties by stipulation filed herein. The only issue remaining is the proper useful lives for depreciation purposes and the salvage values of a sawmill, a planing mill, and related assets used by petitioners in their businesses. Thornton Lumber Company (hereinafter called Thornton) is a corporation organized under the laws of the State of Montana on September 1, 1947, with its principal place of business at Missoula, Montana. During the fiscal years involved, Thornton was principally engaged in the sawmill and lumber business. Thornton filed its corporation tax returns for its fiscal years ended *25 June 30, 1954, 1955, and 1956, with the district director of internal revenue, Helena, Montana. Western Montana Lumber Company of Missoula (hereinafter called Western) is a corporation organized under the laws of the State of Montana on June 16, 1948, with its principal place of business at Missoula, Montana. All of the stock of Western is owned by Thornton. During the fiscal years involved, Western was principally engaged in the sawmill and lumber business. Western filed its corporation tax returns for its fiscal years ended June 30, 1954 and 1956, with the district director of internal revenue, Helena, Montana. All the facts have been stipulated and are found as stipulated. All the facts contained in paragraphs 1 through 33 of the stipulation of facts filed herein, which set forth the agreements of the parties settling all issues raised by the notices of deficiency except the depreciation issue, are specifically incorporated herein by reference and shall be considered a part of the ultimate findings of this Court and are to be used in the computations of tax deficiencies under Rule 50. On or about July 1, 1951, Thornton completed construction of a modern sawmill at Missoula, *26 Montana. The sawmill was located on land owned by an unrelated party and leased to Western. The lease on this land ran to the year 1959 and contained a 10-year renewal option which was irrevocable by the lessor. For its fiscal years ended June 30, 1951 through 1955, Thornton computed and claimed depreciation on its sawmill buildings on the basis of a useful life of 20 years and on its sawmill equipment on the basis of 20,000 operating hours or the equivalent of 40 hours per week, 50 weeks per year, for 10 years. During its fiscal years ended June 30, 1952 and 1953, the sawmill equipment was used 4,255 hours and 5,222 hours, respectively, with the resulting depreciation claimed by Thornton for those years amounting to approximately 47.5 percent of the cost of the equipment. Prior to August 22, 1960, respondent audited Thornton's tax returns for its fiscal years ended June 30, 1951 through 1953. During the course of this examination, duly authorized representatives of Thornton admitted to respondent's agent that the proper useful life of Thornton's sawmill equipment was 37,500 operating hours, or the equivalent of 40 hours per week for 18 years, or 73 hours per week for 10 years *27 rather than the 20,000 operating hours used in computing depreciation on Thornton's tax returns. Representatives of Thornton also admitted that the proper estimated salvage value of the sawmill equipment at that time was $20,000. On its tax returns for its fiscal years 1954 and 1955, Thornton claimed depreciation on its sawmill equipment on the basis of 20,000 operating hours. On its tax return for its fiscal year 1956, Thornton claimed depreciation on its sawmill equipment on the basis of 37,500 operating hours and an estimated salvage value of $20,000. During its fiscal years ended June 30, 1955 and 1956, Thomton made substantial additions to its sawmill equipment. When respondent audited Thornton's tax returns for its fiscal years 1954, 1955, and 1956, he proposed adjustments to depreciation claimed for those years on Thornton's sawmill equipment based on the use of 37,500 operating hours as the estimated useful life, and by using estimated salvage value of $20,000 for the year 1954, $25,000 for the year 1955, and $40,000 for the year 1956, the latter two increases in salvage value reflecting the substantial additions made to Thornton's sawmill equipment account for those *28 years. These adjustments were made to conform the estimated useful life used for the years 1954 and 1955 to the estimated useful life agreed to for the years 1951 through 1953 and to the estimated useful life used by Thornton for the year 1956. These proposed adjustments were used by respondent in computing the deficiencies here involved. On its tax returns for its fiscal years 1954 and 1956, Western claimed depreciation on its sawmill building and machinery, kiln building, and other related equipment, on the straight-line method using a 10-percent annual rate of depreciation. Depreciation on its planing mill was computed and claimed on the basis of a 20,000-hour operating life. The 25-percent straight-line rate was used in computing depreciation on its motive equipment. The depreciation rate claimed on other miscellaneous equipment ranged from 10 percent on buildings to 25 percent on a scoopmobile and lumber piler. On depreciable assets acquired after June 30, 1954, Western computed depreciation on the sum of the years-digits method. No provision was made for salvage value on any of Western's depreciable assets. The equipment on which Western claimed depreciation on an operating-hours-of-use *29 method was operated 3,155 hours during fiscal 1955 and 4,687 hours during fiscal 1956. The equipment Western depreciated on the operating-hours-of-use method was similar in quality, design, and use to the equipment depreciated by Thornton on the operating-hours-of-use method. As a result of the audit by respondent of Western's tax returns, a statutory notice of deficiency was issued to Western for its fiscal years 1954 and 1956, determining deficiencies partly based on adjustments to claimed depreciation. The basic adjustments to depreciation made in the statutory notice consisted of extending the life on two new concrete kilns from 10 years to 20 years, increasing the life of planing mill machinery from 20,000 operating hours to 37,500 operating hours with a 10-percent salvage value, establishing a 20-percent estimated salvage value on motive equipment, and increasing the estimated useful life of a jeep and "Michigan" from 3 years to 4 years. Petitioners did not produce any evidence to establish either that their prior admissions with respect to proper estimated useful lives and salvage values for their depreciable assets were not correct or that the adjustments in depreciation *30 determined by respondent in his notices of deficiency for the years here involved were not correct. On brief petitioners agree to the adjustments in depreciation determined by respondent but request that the Court make a determination and decision thereon. Consequently, the adjustments in depreciation and the allowable depreciation with respect to the items mentioned herein determined by respondent in his notices of deficiency for the years here involved are hereby found to be correct and respondent is sustained on this issue. In order to reflect the agreements of the parties on other issues, Decisions will be entered under Rule 50.